[No. 10,929.  In Bank.— April 1, 1884.]

THE PEOPLE, RESPONDENT, *v.* LLOYD L. MAJORS APPELLANT.

CRIMINAL LAW — MURDER — JEOPARDY — KILLING TWO PERSONS BY SAME ACT. — The murder of two persons by the same act constitutes two offenses for each of which a separate prosecution will lie, and a conviction or acquittal in one case does not bar a prosecution in the other.

ID. — CHANGE OF VENUE — COUNTER-AFFIDAVITS. — Upon an application by a defendant in a criminal case for a change of the place of trial, counter-affidavits may be filed by the prosecution controverting defendant's statements.

ID. — TRIAL FOR MURDER WHILE UNDER SENTENCE OF LIFE IMPRISONMENT. — A person may be tried for the crime of murder, notwithstanding he is at the time serving a sentence of life imprisonment for another offense.

ID. — PLEA OF FORMER CONVICTION — NEW TRIAL — APPEAL. — An appeal does not lie from an order of the Superior Court refusing a new trial on a plea of former conviction, and it is within the power of the court to proceed with the trial of a case where such attempted appeal has been taken and is still pending in the appellate court.

ID. — IMPANELING JURY — SCRUPLES AGAINST DEATH PENALTY — PEREMPTORY CHALLENGE. — Subdivision 8 of section 1074 of the Penal Code, which provides for the peremptory challenge of jurors who entertain such conscientious opinions as would preclude their finding a defendant guilty of an offense punishable with death, applies to all prosecutions for murder, although the crime of murder is not necessarily punishable by death.

ID. — Where the prosecution in a criminal case passes the jury to the defendant, declining to exercise any challenge, and the defendant exercises his right of peremptory challenge by objecting to one juror, the action of the court in subsequently permitting the prosecution to peremptorily challenge a juror is at most an irregularity not affecting any substantial right of the defendant.

ID. — EVIDENCE — RES GESTÆ. — In a prosecution for murder the condition in which the body and clothing of the deceased were found is properly admissible in evidence. The surrounding circumstances may always be shown as a part of the *res gestæ.*

ID. — CONVERSATIONS BETWEEN CONSPIRATORS. — All conversations between conspirators had at the time the main subject of the conspiracy was discussed are admissible in evidence.

ID. — STRIKING OUT EVIDENCE. — Where evidence is stricken out on motion of the defendant, and the jury are instructed to disregard it, the error in its admission is cured.

APPEAL from a judgment of the Superior Court of Santa Clara County upon a plea of former conviction, and from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*J. B. Lamar,* for Appellant.

*Attorney-General Marshall,* and *District Attorney Campbell,* for Respondent.

MORRISON, C. J. — The defendant was prosecuted by informa-
tion filed in the Superior Court of Santa Clara County, for the
murder of one Archibald McIntyre, and a change of venue hav-
ing been granted him to the county of Alameda, he was tried
and convicted there of the crime of murder in the first degree.
The appeal is from the judgment against him in the first-named
court on the plea of former conviction, as well as from the judg-
ment on the final trial in the county of Alameda, and brings
before us, for review, all the orders and proceedings in the case
in both courts.

The importance of the case, as well as the zealous and able
manner in which it has been presented, demand from us a care-
ful consideration of all the questions involved.

The first and most important point to be considered is the plea
of a former conviction, and for a full and distinct understanding
of the trial on that plea, we will consider the facts upon which
it was submitted to the jury, as the same are found in the fol-
lowing stipulation : -

### STATEMENT OF FACTS.

" I.   That the defendant, Lloyd L. Majors, is the identical
Lloyd L. Majors who was a defendant in the information filed
in this court on the 30th day of March, 1883, charging Joseph
Jewell, John Showers, and Lloyd L. Majors with the crime of
murder in the killing of one William P. Renowden at the said
county of Santa Clara on the 11th day of March, 1883.

" II.   That under said information of March 30, 1883, said
Lloyd L. Majors was duly arraigned, and on the 2d day of April,
1883, plead ' not guilty,' and was put upon his trial.   That on
the 27th day of May, 1883, the jury returned into said court a
verdict in the following words, etc. : —

" ' The Superior Court, county of Santa Clara:

" ' The People of the State of California versus Lloyd L.
Majors, Defendant.

" ' We, the jury in the above-entitled cause, find the defend-
ant, Lloyd L. Majors, guilty of murder in the first degree, with
imprisonment for life in the State prison.

" ' JOHN CARRICK, Foreman.'

" III.   That in pursuance of the above verdict the court on

the 2d day of June, 1883, pronounced upon said Lloyd L. Majors judgment of imprisonment for life in the State prison at San Quentin, and said judgment is final and in full force.

"IV. The facts shown by the evidence upon the said trial under said information of March 30, 1883, and upon which said Majors was convicted as aforesaid, are as follows : That said Lloyd L. Majors counseled and advised one Joseph Jewell to rob one William P. Renowden, living near Lexington, in the said county of Santa Clara, on the 11th day of March, 1883. That on said day said Jewell repaired to said Renowden's house, taking with him one John Showers. That said Jewell and Showers unexpectedly found at the house of said Renowden one Archibald McIntyre, who was then residing with said Renowden. That in the attempt to carry out the design of robbery, both said Renowden and said McIntyre were there and then— at the same point of time, to wit, about 6:30 o'clock P. M. of the 11th day of March, 1883, killed by said Jewell and Showers.

"V. Said Majors was not present, neither did he personally participate in the said act of killing said Renowden and McIntyre, or either of them, except counseling and advising said Jewell to commit said robbery as aforesaid.

"VI. The foregoing evidence and facts are substantially the evidence and facts adduced upon the trial of said Lloyd L. Majors upon the trial heretofore had in this court, upon said information, for the murder of William P. Renowden, and which are to be adduced and proven in support of the information now pending, to which the said Lloyd L. Majors has pleaded a former conviction, should the same be put in issue by a plea of not guilty.

"VII. It is stipulated and agreed by the plaintiffs and the defendant, as follows : The foregoing statement of evidence and facts are hereby admitted to be true, solely for the purpose of determining the issue now pending in this court on the plea of former conviction, and shall be read in evidence on the trial of said issue as the evidence of the case, together with the record of the case of the People against Lloyd L. Majors, for the murder of William P. Renowden, heretofore tried in this court, consisting of the judgment roll and the minutes of the court in said cause."

The defendant was first prosecuted for and convicted of the murder of said Renowden, and as it is stipulated in the agreed statement of facts on which he was tried in the present case on his plea of former conviction, that Renowden and McIntyre were "at the same point of time, to wit, about 6:30 o'clock P. M. of the the 11th of March, 1883, killed by said Jewell and Showers," it is therefore claimed that defendant has been *once in jeopardy*, and cannot now be prosecuted for the murder of McIntyre. In support of this ground of defense defendant relies upon numerous adjudged cases, and it must be conceded that the general principle is too well established to admit of controversy, that the law will not allow the people to maintain a second prosecution after a former trial and conviction or acquittal of a party *for the same offense*. The cases most strongly relied upon, on the part of the defense, we will now proceed to examine.

The first is the case of *Damon* v. *The State*, 2 Tyler, 387, in which it appeared that the defendant had, in the same affray and by the same stroke, cut two persons, and having been convicted of wounding one of the parties, it was held that the plea of *autrefois convict* was well pleaded to an indictment for wounding the other. In delivering the opinion of the court the learned judge says: "The indictment charges the defendant with having disturbed the public peace by assaulting and wounding one of its citizens. For this crime he shows that he has been legally convicted by a court of competent jurisdiction. He cannot, therefore, be again held to answer in this court for the same offense." On the theory that both indictments were for "the same breach of the peace," and not for wounding two persons by the same wrongful act, the case may be harmonized with authorities which will be hereafter referred to in this opinion. Another case relied on is that of *The State* v. *Cooper*, 13 N. J. L. 361. The defendant was indicted for the crime of murder, committed in feloniously setting fire to and burning the dwelling-house of one Ralph Smith, in which was one Joseph Hooper, who was burned to death. To the indictment defendant interposed the plea of former conviction on an indictment for the crime of arson, committed in setting fire to and burning the same dwelling-house. The plea was sustained, and the court in its opinion

says : " It is a maxim of the common law that no man is to be brought in jeopardy of his life more than once for the same offense. . . . . Upon this principle are founded the pleas of *autrefois acquit* and *autrefois convict.* The writers on the subject concur in stating that these pleas must be upon a prosecution for the same *identical* act and crime. (3 Blackst. Com. 336; Chitty Cr. Law, 1st vol. pp. 452, 462.) 'But,' says Chitty, p. 455, 'it is not in all cases necessary that the two charges should be precisely the same in point of degree, for it is sufficient *if an acquittal of the one would show that the defendant could not have been guilty of the other.'* Thus, a general acquittal of murder is a discharge upon an indictment for manslaughter on the same person, *because the latter charge was included in the former.* . . . . At first view it appears as if there were two crimes distinctly indictable and punishable. But our sense of justice is shocked by the idea that a man shall be convicted and punished for the arson, with that measure of punishment which the laws mete out to those guilty of that crime, and that afterwards for a perfectly accidental and involuntary killing he shall be liable to the same punishment of death, which is inflicted on the willful and malicious murderer. In the case before us the killing *was a simple consequence of the burning,* and there is no pretense that it was, in point of fact, intentional." We have quoted from the opinion at some length to show how far it bears upon the case we are now considering.

A third case is that of *Clem* v. *The State,* 42 Ind. 420, in which Downey, J., delivering the opinion of the court, says : " It does not follow because one of the indictments was for the murder of Nancy Jane Young, and the other for the murder of Jacob Young, that the crime is not the same. If the same act of the defendant resulted in the death of both of them, there was but one crime. When, by the discharge of a firearm, or a stroke of the same instrument, an injury is inflicted upon two or more persons, or their death is produced, there is but one crime committed." This case is an authority in favor of the defendant, if, as his learned counsel contends, the stipulation means that the deaths of Renowden and McIntyre resulted from one and the same act — a question which we will consider hereafter.

The cases of *Copenhaven* v. *The State*, 14 Ga. 8, and *Holt* v. *The State*, 38 Ga. 187, are also cited on behalf of the defendant; and it is there said that "the plea of *autrefois acquit*, or *convict*, is sufficient whenever the proof shows the second case to be the same *transaction* with the first." The question how far the authority of these cases agrees with other kindred cases depends on what is meant by the word "transaction."

The foregoing review of the cases relied on in support of defendant's plea of former conviction will suffice for the purposes of this opinion, and we will now proceed to the examination of some of the cases cited by the prosecution.

It is claimed that the case in 42 Indiana has been overruled by the same court in the two later cases of *State* v *Elder*, 65 Ind. 282, and *State* v. *Hattebaugh*, 66 Ind. 223. In the first case (reported in 65 Ind.), the rule on the subject we are now treating is stated as follows: "When the same facts constitute two or more offenses, wherein the lesser offense is not necessarily included in the greater, and when the facts necessary to convict in the second prosecution would not necessarily have convicted in the first, then the first prosecution will not be a bar to the second, *although the offenses were both committed at the same time and by the same act.*" And in the other case (66 Ind.) it is said: "The usual test by which to determine whether the former conviction or acquittal was for the same offense as that charged in the second prosecution, and therefore whether the former is a bar to the latter, is to inquire whether the evidence necessary to sustain the latter would have justified a conviction in the former case."

Testing the case of *Clem* v. *The State*, *supra*, by the rule laid down in the later cases referred to (65 and 66 Ind.), it would be difficult to sustain the authority of the former. Clem being indicted and prosecuted for the murder of Nancy Young could not, on such indictment and prosecution, have been convicted of the murder of another person, to wit., Jacob Young, nor *vice versa*. Indeed, on an indictment for the murder of one of the Youngs, evidence on the part of the prosecution tending to prove the murder of the other, would have been wholly inadmissible on general rules of evidence.

We now come to cases on the other side, more directly in

point. The first case to which we will refer is that of *The State v. Standifer*, 5 Port. 523, in which it appears that two persons, John W. F. Long and Lei A. Long, were injured, one killed and the other wounded, by the defendant, at the same time and in the same transaction. For the murder, the defendant was tried and acquitted, and on the trial for the wounding he pleaded the acquittal in the murder case. The court held the plea bad, and stated the law as follows: "Cases exist in which a minor offense may be discharged by the acquittal of the individual charged, on an indictment for a major offense, but these are cases in which the jury, trying the case, could have lawfully returned a verdict for the lesser crime. Thus an acquittal for murder would be a bar to an indictment for manslaughter. So of a burglary, when the same indictment included a charge of larceny, an acquittal would be a complete bar. But the reason in such cases is that the jury could, if the evidence was satisfactory, have convicted the offender of the lesser criminal charge. In the present case, no question can possibly arise as to the law. The offenses have no appearance of identity; they could not be included in the same indictment, and the evidence which would produce an acquittal of the one might produce a conviction of the other."

The next case is that of *Teat* v. *The State*, 53 Miss. 439, where it was held, that "T. and S. lying in ambush together, each armed with a double-barreled shot gun, two distinct, but almost simultaneous shots were fired from the ambush, by which G. and W. were mortally wounded, and S. fired a third shot in the prostrate body of G., that the murder of G. was a distinct crime from that of W., and that for each of the offenses T. might be separately tried; nor could he, on an indictment for the murder of W., successfully plead former jeopardy in having been already tried for the murder of G. A putting in jeopardy for one act is no bar to a prosecution for a separate and distinct act, merely because they are so closely connected in point of time that it is impossible to separate the evidence relating to them on the trial for one of them first had." The learned judge further says: "It is believed that no well-considered case can be found, where a putting in jeopardy for one act was held to bar a prosecution for another separate and dis-

tinct one, merely because they were so closely connected in point of time that it was impossible to separate the evidence relating to them."

In *Vaughan* v. *The Commonw.* 2 Va. Cas. 273, it was held that "if a person be indicted for shooting S. W., and acquitted thereof, and then indicted for shooting J. W., her plea of *autrefois acquit* will not be supported, although the same act of shooting is charged in each indictment."

Bishop in his work on "Criminal Law" vol. 1, § 1051, speaking of the identity of offenses, says: "They are not the same, first, when the two indictments are so diverse as to preclude the same evidence from sustaining both; or, secondly, when the evidence offered on the first indictment, and that intended to be offered on the second, relate to different transactions, whatever be the words of the respective allegations; or, thirdly, when each indictment sets out an offense differing in all its elements from that in the other, though both relate to one transaction," etc.

In the case of *Freeland* v. *The People*, 16 Ill. 380, it was held "that it was no bar to a prosecution for a riot that one of the accused had been tried and convicted and fined for an assault and battery arising out of the same transaction or offense, and occurring at the same time. A riot may embrace an assault and battery, yet a conviction of the latter cannot be pleaded in bar of a prosecution for the former." (See also *Severin* v. *The People*, 37 Ill. 414.)

In the case of *Commonw.* v. *Roby*, 12 Pick. 496, the court says that "a conviction upon an indictment for an assault with intent to commit murder cannot be pleaded in bar to an indictment for murder." And further: "Unless the first of the two indictments was such as the prisoner might have been convicted upon, by proof of the facts contained in the second, an acquittal or conviction on the first can be no bar to the second."

In the case of *Burns and Carey* v. *The People*, 1 Parker Cr. C. 182, the Supreme Court of New York holds that "to constitute a bar, the offense charged in both indictments must be identically the same, in law as well as in fact." To the same effect is the case of *The People* v. *Saunders*, 4 Parker Cr. C. 196, as is also the case of *Regina* v. *Morris*, 10 Cox C. C. 480.

We might cite many other cases laying down the same principle, but we will content ourselves with the foregoing, and one other case from our own reports. We refer to the case of *The People* v. *Alibez*, 49 Cal. 452, where it was held that an "indictment which charges the defendant with the murder of three persons, charges three offenses." The charge was that the defendant administered a poisonous drug, to wit, strychnine, to three persons at one and the same time, and the trial court was asked to arrest the judgment on the ground that the indictment charged more than one offense, in violation of section 954 of the Penal Code. The court refused to arrest the judgment, and the Supreme Court reversed the case. This is a direct authority on the point we have been considering, and we do not doubt its correctness.

On the trial of the defendant Majors for the murder of Renowden he could not have been convicted of the murder of McIntyre. The two crimes, although committed at one time and by the same act, are entirely different in their elements, and the evidence required to convict in the one case very different from that essential to a conviction in the other.

Tested then by the rule laid down in the foregoing cases, the plea of former conviction was not sustained on the trial in the Superior Court of Santa Clara County.

But we do not think the stipulation means that both Renowden and McIntyre were murdered by one and the same act. It might well be that they were both killed at the same point of time, and it does not follow therefrom, that the murder of the two was accomplished by one act. There were two parties directly concerned in the murder, and each of them might have discharged his weapon at his victim at the same moment or point of time, and yet the killing under such circumstances would have been done by two acts, entirely separate and distinct from each other. Under such a state of facts the authorities all agree that there may be several prosecutions, and the burden of proof was on the defendant to show that there was but one act which caused the death of the two. But even on this theory, we have attempted to show that the better rule, and that established by the great weight of respectable authority, is that the murder of two persons, even by the same act, constitutes two offenses, for

each of which a separate prosecution will lie, and that a conviction or acquittal in one case does not bar a prosecution in the other.

2. Defendant's second point is, that the court erred in permitting the introduction of counter-affidavits on defendant's motion for a change of the place of trial.

Sections 1033 and 1034 of the Penal Code provide for the removal of a criminal action on the application of defendant, and section 1035 of the same Code declares that "if the court is satisfied that the representation of the defendant is true, an order must be made for the removal of the action to the proper court of a county free from a like objection." It is claimed, on behalf of the defense, that when a sufficient showing for such removal is made by the defendant's affidavit, the court is obliged to accept as true the facts sworn to by him, and the people cannot controvert his statements by opposing affidavits. The language of the Code is that "if the court is *satisfied* that the representation of the defendant is true," it shall make the order of removal. Is it not a fair implication from the language of the provision that counter-affidavits may be filed on behalf of the people, and is such not the good sense of the law in such cases? When the proper showing is made by the defendant, the court would be *obliged* to make the order of removal, if counter-affidavits were not allowed, but the court must be *satisfied* that the defendant's affidavit *speaks the truth*, and it may be that this can be shown only after the prosecution has been allowed to file counter-affidavits.

Such seems to have been the view taken by this court in *People* v. *Yoakum*, 53 Cal. 570, and we have no doubt of its correctness.

3. On the motion of the prosecution for the court to fix a day for a trial of the case, the defendant objected to the jurisdiction of the court on two grounds: First, that the defendant was under sentence of life imprisonment in the State prison; and secondly, that an appeal had been taken and was still pending in the Supreme Court from the order of the Superior Court denying a new trial on the plea of former conviction.

The first objection is answered by the decision of this court in the case of the *People* v. *Hong Ah Duck*, 61 Cal. 387; and the second by the case of *People* v. *Majors*, 65 Cal. 138.

It is unnecessary for us to do more than refer to these cases. The defendant had been once tried on his plea of former conviction, and it was not the duty of the court to grant him another trial on that plea. We see no irregularity in the proceedings of the court connected with this assignment of error.

4. The fourth ground of error relied upon relates to the impaneling of the jury. The prosecution was allowed to challenge jurors peremptorily under subdivision 8 of section 1074 of the Penal Code, which provides as follows:—

"If the offense charged be punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty, in which case he must neither be *permitted* nor compelled to serve as a juror."

It is claimed that inasmuch as the crime of murder is not *necessarily* punishable by death, therefore the above subdivision of section 1074 does not apply. We cannot yield our assent to this view of the law. Murder may be punished under the Code by death, but if jurors in the case entertain conscientious scruples against the infliction of the death penalty, the law inflicting that penalty would be a dead letter on the statute book. It has always been held, so far as our experience or knowledge goes, that the provision of the Code referred to applies in all prosecutions for murder, and we have no doubt that it does.

5. The next objection involves another question concerning the right of peremptory challenges. It is said that the prosecution "passed the jurors, declining to exercise any challenge. The defendant being then called upon to exercise his peremptory challenges, if any he had, the defendant then challenged one juror, and the prosecution then immediately demanded to challenge one of said jurors, and was allowed to do so, against the defendant's objection."

This, it is claimed, was a violation of section 1088 of the Penal Code, which provides "if all challenges (for cause) on both sides are disallowed, either party, first the people and then the defendant may take a peremptory challenge, unless the parties' peremptory challenges are exhausted."

In the case of *The People* v. *McCarthy*, 48 Cal. 557, it was held "that if the prosecution in a criminal case pass the jury to the defendant, who declines to make any challenge, the prosecu-

tion may then interpose a peremptory challenge to a juror before he is sworn." It is true the foregoing case differs slightly from this, inasmuch as in that case the defendant did not interpose any challenge, whereas, in this case, he did; but we do not think that the difference between the facts of the two cases in any manner affects the principle applicable to both.

It is there said that the prosecution had not accepted the jury by only passing them to the other side.

At most, the action of the court was an irregularity, not affecting, so far as we can see, any substantial right of the defendant, and one which does not call for a reversal of the judgment. (Pen. Code, § 1258; *People* v. *Sprague,* 53 Cal. 491.)

6. The admission of certain evidence showing, or tending to show, that Renowden's person and clothing had been burned, is the next matter complained of. We do not clearly perceive what objection could have been made to the admission of this evidence. The production of the bloody clothing worn at the time by the victim of a homicide is a matter of common practice, and certainly it would be permitted for the jury to view the remains of the deceased, as they are allowed under the express provision of the Code to view the premises where the homicide was committed. Sometimes bodies are exhumed for the purpose of procuring evidence against the accused. The condition in which the body and clothing were found were properly admitted in evidence. The surrounding circumstances may always be shown as a part of the *res gestæ.* (1 Greenl. Ev, § 108.)

7. The conversations admitted in evidence between defendant and Jewell all occured at one time and were properly admitted. At the time the main transaction was discussed, those other matters were spoken of. If they had not been talked about at the same time, and in the course of the same conversation, they would have been inadmissible. But independent of this, they were stricken out on motion of defendant's counsel, and the jury were instructed not to consider them. This was of itself sufficient to cure any error there might have been in their admission.

8. Defendant complains of the action of the court in giving and refusing certain instructions. We have examined the instructions given, and think they contain a correct exposition of the law applicable to the case. We have also examined the

instructions refused, and think the action of the court in refusing them was correct.

We have now considered all the points in the case made by the learned counsel for the defense, and have endeavored to answer them.

No error is found in the case which calls for a reversal of the judgment below, and the same is, therefore, affirmed, together with the order denying a new trial.

Judgment and order affirmed.

MYRICK, J., ROSS, J., McKEE, J., THORNTON, ᴄ., McKIN-STRY, J., and SHARPSTEIN, J., concurred.

Rehearing denied.